UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**NEIL ST. JOHN RAYMOND**,                            Chapter 7
    Debtor                                       Case No. 13-16214-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**JOSEPH G. BUTLER, CHAPTER 7 TRUSTEE**
    Plaintiff
v.                                                    Adv. P. No. 14-1082
**CANDLEWOOD ROAD PARTNERS, LLC,
MAPLECROFT PARTNERS LLC,
53-85 CANAL STREET LLC, BUTTONWOOD
TRUST, BUTTONWOOD NOMINEE TRUST,
2002 BUTTONWOOD NOMINEE TRUST,
NEIL ST. JOHN RAYMOND, JR., MACY
RAYMOND, BENJAMIN RAYMOND,
SAMUEL RAYMOND, AND ELIZABETH
RAYMOND,**
    Defendants

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**MEMORANDUM**

    Whereas, the Debtor filed a voluntary Chapter 11 petition on October 24, 2013; and

    Whereas, the Debtor filed a Motion for Entry of Order Converting Debtor's Chapter 11 Case to Chapter 7, which the Court granted on November 20, 2013; and

    Whereas, the Plaintiff, Joseph G. Butler, Esq., was appointed Chapter 7 Trustee (the "Chapter 7 Trustee"); and

    Whereas, the Court established February 18, 2014 as the deadline for filing

complaints under 11 U.S.C. §§ 523 and 727, and

Whereas, neither the Chapter 7 Trustee nor any creditors filed a timely complaint under 11 U.S.C. § 523 or § 727,[1] and the Court entered a discharge order on April 1, 2014; and

Whereas, on April 25, 2014, the Chapter 7 Trustee filed a Verified Complaint against the Defendants, Candlewood Road Partners, LLC ("Candlewood"), Maplecroft Partners LLC ("Maplecroft"), 53-85 Canal Street LLC ("Canal Street"), Buttonwood Trust, Buttonwood Nominee Trust, 2002 Buttonwood Nominee Trust and certain individual defendants, namely the Debtor's spouse ("Elizabeth") and children, Neil St. John Raymond ("Jed"), Macy Raymond ("Macy"), Benjamin Raymond ("Benjamin"), and Samuel Raymond ("Samuel");[2] and

---

[1] Accordingly, neither the Chapter 7 Trustee nor any creditors directly challenged the truth and accuracy of the Debtor's schedules of assets and liabilities which he signed under penalty of perjury for the purposes of excepting debts from discharge or obtaining a determination that the Debtor was not entitled to a discharge. *See* 11 U.S.C. § 727(a)(4), (5).

[2] The Court may take judicial notice of its own docket. *See* LeBlanc v. Salem ( In re Mailman Steam Carpet Cleaning Corp.), 196 F.3d 1, 8 (1st Cir.1999) ("The bankruptcy court appropriately took judicial notice of its own docket.").

On amended Schedule B - Personal Property, the Debtor listed a 37.11% ownership interest in Maplecroft, whose assets were disclosed as a 1% interest in 53-85 Canal Street LLC and a potential tax refund of $200,000. The Debtor listed an account receivable from 41-45 Broad Street LLC in the sum of $50,000, as well as an account receivable from the Buttonwood Trust, "stemming from Trust expenses paid by Debtor personally" and "[p]otentially subject to setoff by Trust." In addition, the Debtor listed his interest in the Buttonwood Trust, and possible claims against the law firm of Craig and McCauley Professional Corporation, and "Buttonwood Trust Trustee, Joseph Brear." The Debtor also disclosed a .5% interest in Raymond Property Company; a 23.08% interest in 41-45 Broad Street LLC, as well as a number of other entities which the Chapter 7 Trustee did not mention in his Verified Complaint. The Debtor disclosed antique firearms and other

2

Whereas, the Chapter 7 Trustee's Complaint contains eight counts as follows: Count I - Declaratory Judgment (Trust Assets are Part of the Debtor's Estate - 11 U.S.C. § 541(a)); Count II - (Raymond Fraudulently Transferred Assets to His Children - M.G.L. c. 109A, §§ 5 and 6 AND 11 U.S.C. § 544); Count III - Declaratory Judgment (Company Assets are Part of the Debtor's Estate - 11 U.S.C. § 541(a)); Count IV - Veil Piercing (Limited Liability Company Assets are Part of the Debtor's Estate);[3] Count V -Turnover (Turnover of Antique

---

collectibles but ascribed no value to them.

On Schedule F-Creditors Holding Unsecured Nonpriority Claims, the Debtor listed some of the defendants as creditors, including both the Buttonwood Nominee Trust and the 2002 Buttonwood Nominee Trust with a contingent, unliquidated, and disputed claims in unknown amounts, Candlewood with a contingent, unliquidated claim in an unknown amount, Elizabeth Raymond with a claim arising from liquidation of certain stock and other potential claims in unknown amounts, Jed Raymond with a claim in the sum of $20,000. Notably, Jed Raymond filed a proof of claim in that amount. The Buttonwood Nominee Trust, through its trustee, Jed, filed a claim in the sum of $2,569,653.38 with respect to "loans," and Candlewood, through its manager Jed, filed a proof of claim in the sum of $2,104,086.70 with respect to "loans," as well.

[3] Specifically, in Count IV, captioned "Veil Piercing," the Trustee seeks a determination that "the assets of the LLC's are in fact the assets of the Debtor and may be applied in satisfaction of the Debtor's substantial liabilities." Veil piercing, however, generally is a means by which a creditor obtains a determination that corporate insiders are liable to it because there has been "substantial disregard of the separate nature of corporation entities, or serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are action . . . ." My Bread Baking Co. v. Cumberland Farms, Inc., 353 Mass. 614, 752 (1968). See also Morley v. Ontos, Inc. (In re Ontos, Inc.), 478 F.3d 427, 432-33 (1st Cir. 2007), cert. denied, 552 U.S. 823 (2007). In Kraft Power Corp. v. Merrill, 464 Mass. 145, 149 (2013), the Supreme Judicial Court observed:

> Once the corporate veil is pierced, the individual defendant and the corporation become "one for all purposes." United States v. Lehigh Valley R.R., 220 U.S. 257, 272, 31 S.Ct. 387, 55 L.Ed. 458 (1911). We therefore conclude that the analysis is no different when a cause of action is premised on piercing the corporate veil than when it has been brought directly against an alleged wrongdoer. This is because the doctrine is not itself a cause of action but "an equitable tool that authorizes courts, in rare situations, to ignore corporate

3

Guns, Collectibles, and Artwork - 11 U.S.C. §§ 541 and 542); Count VI - Sale (Sale of Collectibles - 11 U.S.C. § 363); Count VII - Reach and Apply (Reach and Apply the Debtors' [sic] Interests in Trusts Pursuant to M.G.L. c. 214, § 3(6)); and Count VIII - Reach and Apply (Reach and Apply the Debtors' [sic] Interests in Companies Pursuant to M.G.L. c. 214, § 3(6)); and

Whereas, pursuant to Count II, the Chapter 7 Trustee contends that the dissolution of the Raymond Children's Trust and the transfer of its assets, namely its 99% interest in Raymond Property Company, its 62.89% interest in Maplecroft, its 99% interest in Canal Street and 230,720 shares of First Ipswich Bankcorp, to Candlewood was a fraudulent transfer of the Debtor's property and asks for entry of an order avoiding the transfer of assets formerly held by the Raymond Children's Trust; and

---

formalities, where such disregard is necessary to provide a meaningful remedy for injuries and to avoid injustice." Attorney Gen. v. M.C.K., Inc., 432 Mass. 546, 555, 736 N.E.2d 373 (2000), citing My Bread Baking Co. v. Cumberland Farms, Inc., *supra* at 620, 233 N.E.2d 748.

Litigants attempt to pierce a corporate veil as a "means of imposing liability on an underlying cause of action such as a tort or breach of contract."

Kraft Power Corp. v. Merrill, 464 Mass. at 148-149 (footnote omitted).  Although the terms "piercing the corporate veil" and "alter ego" frequently are used and analyzed interchangeably, the court in Nat'l City Bank of Minn. v. Lapides (In re Transcolor Corp.), 296 B.R. 343, 362 (Bankr. D. Md. 2003), observed: "Confusion results when courts mistakenly apply the term "piercing the corporate veil" to distinctly different causes of action against the individuals who stand behind the corporation. The true action to "pierce the corporate veil" is brought by parties injured by the corporation to hold liable those corporate officers, directors and/or stockholders whose fraudulent conduct of the corporation caused the injury to the plaintiffs. Liability for harm caused by the corporation is imposed upon the corporation's alter egos by disregarding the corporate form."

Whereas, in conjunction with the filing of his Verified Complaint, the Chapter 7 Trustee filed a Motion for Temporary Restraining Order and Preliminary Injunction (the "Motion") in which he stated that Candlewood and Raymond Property Company ("RPC"), "both entities owned by the Debtor's children but actually controlled by the Debtor," made undocumented loans to 41-45 Broad Street LLC;[4] and

Whereas, in his Motion, the Chapter 7 Trustee requested the following:

[A] temporary restraining order and a preliminary injunction preventing Candlewood Road Partners, LLC ("Candlewood Road") and Raymond Property Company, LLC ("RPC") from collecting, and Partridge Snow and Hahn LLP (the "Escrow Agent") from distributing, funds from the sale of 41-45 Broad Street, Boston, Massachusetts (the "Escrowed Funds") to Candlewood Road or RPC; and

Whereas, in his Motion, the Chapter 7 Trustee stated:

[T]he Escrow Agreement allows Defendants [sic] Candlewood Road and RPC to withdraw the Escrowed Funds after April 25th, upon five (5) days notice to the Escrow Agent and the Trustee. Immediate relief in the form of a temporary restraining order and preliminary injunction is necessary to prevent Candlewood Road and RPC from withdrawing the Escrowed Funds and transferring or otherwise consuming the Escrowed Funds;

and

Whereas, in support of his Motion, the Chapter 7 Trustee argues:

In order to allow the sale to proceed and simultaneously preserve the

---

[4] Exhibit CC to the Verified Complaint sets forth undocumented loans, excluding interest, made by the Debtor ($42,571.02); RPC ($52,654), and Candlewood ($277,594.10) to 41-45 Broad Street LLC. The Chapter 7 Trustee permitted $68,500 of the Broad Street sale proceeds to be distributed to RPC so that it could cover payroll and tax obligations. The Debtor listed a 23.08% ownership interest in 41-45 Broad Street LLC on Schedule B - Personal Property.

>Trustee's right to challenge the authenticity of the loans and recover the $38,627.57 allegedly due to RPC and $308,318.93 allegedly due to Candlewood Road (the "Escrowed Funds") for the Debtor's estate, the parties agreed that the Escrowed Funds would be held by the Escrow Agent until today, April 25, 2015. The Court should enjoin the distributions before adjudicating the Trustee's Complaint, filed contemporaneously herewith, which alleges, among other things, that (i) the assets nominally held by Candlewood Road, including a 99% interest in RPC, were fraudulently transferred by the Debtor to his children, who subsequently assigned their interest in RPC to Candlewood Road; (ii) Candlewood Road and RPC's assets are properly part of the estate pursuant to 11 U.S.C. § 541(a); and (iii) Candlewood and RPC are alter egos of the Debtor;

and

Whereas, the Defendants oppose the Chapter 7 Trustee's Motion, arguing the following:

>As a threshold matter, while Candlewood Road does acknowledge owning a 99% interest in RPC, RPC is a separate entity and is not a defendant in this proceeding. Therefore, the request for relief against it is meritless. More broadly, however, the Complaint will not survive the Defendants' motion to dismiss for failing to state a claim upon which relief can be granted. The claims asserted in the Complaint against the Raymond Children's Trust (the "Children's Trust") and Candlewood Road, at bottom, require the Trustee to establish (i) that the alter ego and reverse veil piercing claims are permissible, (ii), if permissible, that the Trustee has the standing to bring such claims, and (iii), if standing exists, that (a) the Children's Trust is the alter ego of the Debtor and that the dissolution of the Children's Trust constituted a fraudulent transfer by the Debtor, (b) that the Trustee can pierce the corporate veil of Candlewood Road, and (c) the in pari delicto doctrine does not apply to his claims. The Trustee cannot establish the permissibility of the claims or the standing to bring such claims. And even if the Trustee could survive these hurdles, the facts and law do not support the fraudulent transfer and veil piercing claims. As a result, the Trustee does not have a likelihood of success on the merits and his request for a preliminary injunction should be denied. . . ;

and

6

Whereas, the Verified Complaint and exhibits attached to it establish that the Raymond Children's Trust was formed in 1981 by the Debtor, as donor, and Norman A. Bikales, as the original trustee, who was succeeded as trustee, at an unspecified time, by Attorney Joseph A. Brear, Jr. ("Attorney Brear"), an attorney who was with the now closed law firm of Craig & McCauley Professional Corporation,[5] some of whose partners and associates joined the law firm of Partridge, Snow, LLP, the Escrow Agent with respect to the Escrowed Funds; and

Whereas, "Article First" of the Raymond Children's Trust provided in pertinent part the following:

> The Trustee shall pay or apply so much of the net income and principal of the trust to or for the benefit of such one or more of the members of a group consisting of the issue of the Donor living from time to time, and in such amounts and proportions, as the trustee may in the trustee's absolute discretion determine . . . ;

and

Whereas, "Article Fifth of the Raymond Children's Trust provides in pertinent part the following:

> Notwithstanding anything herein contained to the contrary, no powers enumerated herein or conferred upon trustees generally by law shall be construed to enable the Donor or any other person to purchase, exchange or otherwise deal with or dispose of all or any part of the principal or the trust or the income therefrom for less than an adequate consideration in money or money's worth, or to enable the Donor to borrow all or any part of the

---

[5] The exhibits to the Verified Complaint establish that Craig and McCauley Professional Corporation served as counsel to the Debtor for many years prior to the commencement of his bankruptcy case.

7

principal or income, directly or indirectly or to authorize the application of any principal of the trust or the income therefrom to the payment of premiums on the policy of insurance on the life of the Donor or the spouse of the Donor;

and

Whereas, RPC, Partridge Snow and Hahn LLP, and Attorney Brear are not defendants in the Chapter 7 Trustee's action,

Now, therefore, the Court rules as follows.

The United States Court of Appeals for the First Circuit has set forth the standard for a preliminary injunction as follow:

> In deciding whether to grant a preliminary injunction, a district court must weigh the following four factors: (1) the likelihood of the movant's success on the merits; (2) the potential for irreparable harm to the movant; (3) a balancing of the relevant equities, i.e., "the hardship to the nonmovant if the restrainer issues as contrasted with the hardship to the movant if interim relief is withheld," Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 5 (1st Cir. 1991); and (4) the effect on the public interest of a grant or denial of the injunction. *See, e.g.*, id. However, the "*sine qua non* of [the preliminary injunction standard] is whether the plaintiffs are likely to succeed on the merits."

Gately v. Comm. of Massachusetts, 2 F.3d 1221, 1224-25 (1st Cir. 1992), *cert. denied,* 511 U.S. 1082 (1994). The Court concludes based upon the Chapter 7 Trustee's Verified Complaint and the submissions of the parties that the Chapter 7 Trustee has failed to establish a likelihood of success on the merits. In addition, he has failed to establish irreparable harm as this Court, on May 15, 2014, granted the Chapter 7 Trustee's Motion for Endorsement of Lis Pendens with respect to properties located in Ipswich, Massachusetts, namely 80 Essex Road, 94 Essex Road, 106 Essex Road, 32 Heartbreak Road, 34 Heartbreak Road, and 85

Argilla Road.

With respect to the likelihood of success on the merits, in <u>Murphy v. Felice (In re Felice)</u>, 494 B.R. 160 (Bankr. D. Mass. 2013), the court stated:

> A Massachusetts court will allow a debtor's creditors to reach trust assets that the debtor holds as trustee if the debtor enjoys such pervasive control over the trust that he or she is capable of treating the property as his or her own. *See* <u>State Street Bank and Trust Co. v. Reiser</u>, 7 Mass. App. Ct. 633, 389 N.E.2d 768 (1979) (creditor of settlor/beneficiary could reach assets of inter vivos trust where settlor retained the power to amend or revoke the trust and the right during his lifetime to direct the disposition of principal and income); <u>ITT Commercial Finance Corp. v. Stockdale</u>, 25 Mass. App. Ct. 986, 987, 521 N.E.2d 417 (1988) (settlor's creditors could reach trust assets where settlor, acting as trustee, had general power to amend and revoke and a specific power to substitute beneficiaries until his death). In every case where a court has found pervasive control, the person has been able to act unilaterally, usually in the capacity as settlor or trustee, to convey trust property to him—or herself through the power to amend or revoke the trust or substitute beneficiaries. *See, e.g.* <u>In re Cowles</u>, 143 B.R. 5, 10 (Bankr. D. Mass. 1992) (holding that trust property was property of the bankruptcy estate when trust empowered the "donor" to withdraw trust property and "donor" referred solely to the debtor and not also his wife with whom he had originally transferred the property into the trust); <u>Braunstein v. BJM Realty Trust (In re Beatrice)</u>, 277 B.R. 439, 448 (Bankr. D. Mass. 2002) (applying State Street and concluding trust assets were property of the bankruptcy estate where debtor-settlor was the sole trustee); <u>Braunstein v. Grassa (In re Grassa)</u>, 363 B.R. 650 (Bankr. D. Mass. 2007) (holding that trust property was property of the bankruptcy estate when trust empowered the sole trustee to amend or revoke the trust and convey the res to herself even though she was not the settlor).

<u>In re Felice</u>, 494 B.R. at 175 (footnote omitted); *see also* <u>Markham v. Fay</u>, 74 F.3d 1347 (1st Cir.1996). Although the Debtor was the settlor of the Raymond Children's Trust, he was neither a trustee nor beneficiary and thus held neither legal nor equitable title to the trust property. Thus, the instant case is distinguishable from the cases cited in <u>In re Felice</u> as the

9

Debtor did not retain the power to alter, amend or revoke the trust, and, therefore, did not retain express control over the disposition of trust assets in the manner set forth in the cases cited in In re Felice; *see, e.g.*, Braunstein v. Beatrice (In re Beatrice), 277 B.R. 439, 448 (Bankr. D. Mass. 2002), *aff'd*, 296 B.R. 576 (B.A.P. 1st Cir. 2003). In addition, according to one commentator,

> Given that a trust is not an entity, it is impossible for a trust to be anybody's alter ego because alter-ego theory, which is simply one of the grounds to "pierce the corporate veil," is inescapably linked to the notion that one person or entity exercises undue control over another person or entity. However, a trust's status as a non-entity logically precludes a trust from being an alter ego.
>
> This critical distinction, however, does not always keep U.S. courts from applying alter-ego theory to trusts. . . .
>
> The flawed application of the alter-ego doctrine to trusts sharply differs from applying alter-ego doctrine to other vehicles. For instance, while a corporation, company, or other artificial entity "has no body to kick and no soul to damn," it is nonetheless a separate juridical person, and it therefore makes theoretical sense to talk of a corporation as potentially being somebody else's alter ego. However, it makes no sense to describe a nonentity like a trust as an alter-ego. Still, U.S. courts and litigants persist in misapplying this doctrine to trusts, which, unfortunately, is not surprising, as alter-ego theory generally suffers from "confused jurisprudence," and its application to trusts is just one more unhappy example of this confusion.
>
> Whereas applying alter-ego doctrine to trusts is conceptually unsound, applying the doctrine to trustees is a different proposition. Trustees are real persons, either natural or artificial, and, as a conceptual matter, it is entirely reasonable to ask whether a trustee is the alter ego of a defendant who made a transfer into trust. Alter-ego doctrine can therefore provide a viable legal theory for creditors vis-a-vis trustees. However, once properly framed, the question can cause significant fact problems for plaintiffs, particularly if the trustee is a professional trustee or trust company. Alter-ego theory typically requires proof that the wrongful actor has somehow gained overbearing control of the alleged alter ego . . . .

> When viewed in this context, it is little wonder that plaintiffs allege that trusts, rather than trustees, are alter egos—proving that a full time professional trustee is the alter ego of a single trustor-transferor would be a daunting task. . . .  Sometimes the trust may amount to a large percentage of a trustee's portfolio—perhaps even the trustee's sole trust in certain family or insider situations—and on these facts it may be plausible to claim that a trustee is a trustor-transferor's alter ego because of the disputed trust's alleged propensity to dominate and control the trustee's business. . . .

2 Richard W. Nenno, Asset Protection: Dom. & Int'l L. & Tactics, § 14A:20 (2014) (footnotes omitted); *contra*, Pergament v. Maghazeh Family Trust (In re Maghazeh), 310 B.R. 5 (Bankr. E.D.N.Y. 2004) (citing Babitt v. Vebeliunas (In re Vebeliunas), 332 F.3d 85 (2d Cir.2003))[6];

The Court concludes that the Chapter 7 Trustee submitted insufficient evidence and legal authority for this Court to determine, at this time, that he has a likelihood of success on the merits of his Verified Complaint, and in particular, Count II, because 1) the Raymond Children's Trust was formed before the Debtor's development projects faltered; 2) the

---

[6] In Maghazeh, the court stated:

> [T]the Court of Appeals for the Second Circuit acknowledged that there is no written opinion from the New York Court of Appeals regarding whether courts may disregard the form of a trust where the trust was not formed for an illegal purpose and there was a separation between the beneficiary and the trustee. The Second Circuit went on to discuss New York State court decisions regarding the right to pierce trusts, and found that New York courts would do so where the "respective parties used trusts to conceal assets or engage in fraudulent conveyances to shield funds from adverse judgments." Babitt v. Vebeliunas ( In re Vebeliunas), 332 F.3d at 91. The Second Circuit did not find that piercing the trust was proper in the Vebeliunas case primarily because there was no evidence that the trust was used to conceal assets from the debtor's creditors. Furthermore, the debtor's wife purchased the assets of the trust with her own funds.

310 B.R. at 16.

provisions of the Raymond's Children's Trust prohibited the Debtor from accessing the trust's assets; 3) the provisions of the trust granted the trustee, Attorney Brear, broad discretion to distribute the principal and income of the trust; 4) the Chapter 7 Trustee failed to allege that Attorney Brear acted as an instrumentality of the Debtor for the purpose of defrauding creditors or other illicit purpose; and 5) the Chapter 7 Trustee failed to cite any Massachusetts case permitting creditors or bankruptcy trustees to "pierce trust veils," as opposed to corporate veils, where the debtor is neither a trustee nor a beneficiary of the trust.

The Chapter 7 Trustee, through Counts I and III, appears to be seeking, without expressly requesting, a determination that the assets of non-debtor entities, namely Candlwood, Maplecroft, and Canal Street, as well as the Buttonwood Trust, the Buttonwood Nominee Trust and the 2002 Buttonwood Nominee Trust, be substantively consolidated with the Debtor's estate without reference to the liabilities of the those entities or additional entities they own, such as Candlewood's 99% ownership of RPC. As the court noted in In re Pearlman, there is a split of authority as to whether a bankruptcy court has the authority to substantively consolidate non-debtors' assets and liabilities into the bankrupt debtor's estate. In re Pearlman, 462 B.R. 849, 854 (Bankr. M.D. Fla. 2012) (rejecting substantive consolidation of non-debtor entities as to do so would circumvent 11 U.S.C. § 303).[7] In view

---

[7] Some courts have questioned the viability of the substantive consolidation remedy in view of Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308 (1999). See In re Owens Corning, 419 F.3d. 195, 208 n.14 (3d Cir. 2009), *cert. denied*, 547 U.S. 1123 (2006).

of that split of authority, the Court concludes that there are additional grounds for a determination that the Chapter 7 Trustee has not established a likelihood of success on the merits. In sum, piercing the corporate veil, which is a rare and extraordinary remedy under Massachusetts law, see Birbara v. Locke, 99 F.3d 1233, 1239 (1st Cir. 1996); Supply Chain Assocs., LLC v. ACT Electronics, Inc., 30 Mass. L. Rptr. 12, 2012 WL 2381908, at *9 (Mass. Super. Ct. March 29, 2012), and substantive consolidation are both highly fact-specific undertakings which require substantial evidence to succeed. The Trustee has not supported his request for relief with sufficient evidence.

Accordingly, the Court denies the Chapter 7 Trustee's Motion for Temporary Restraining Order and Preliminary Injunction.

By the Court,

*/s/ Joan N. Feeney*

Joan N. Feeney
United States Bankruptcy Judge

Dated: July 16, 2014